**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

MELISSA POYER, JOANNE MOYNIHAN,
NICOLE PETKER, and KIMBERLY MARINO,
individually and on behalf of all others similarly
situated,

        Plaintiffs,                          <u>**REPORT AND RECOMMENDATION**</u>

        v.                               **2:22-CV-01506 (JMA) (ST)**

SNOW TEETH WHITENING LLC d/b/a SNOW,
SNOW COSMETICS LLC d/b/a SNOW,
FORESOLD LLC d/b/a FORESOLD, and JOSHUA
ELIZETXE,

        Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

        Plaintiffs Melissa Poyer, Joanne Moynihan, Nicole Petker and Kimberly Marino ("Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly situated brought a class action against Defendants Snow Teeth Whitening LLC d/b/a Snow, Snow Cosmetics LLC d/b/a Snow, Foresold LLC d/b/a Foresold, and Joshua Elizetxe, (collectively "Defendants"). Plaintiffs claim Defendants used false advertising and marketing for Defendants' at-home teeth whitening products, and that Plaintiffs incurred resulting damages. Now before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint ("Motion") under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction based upon lack of standing.

        The Honorable Joan M. Azrack referred Defendants' Motion to the undersigned to issue a Report and Recommendation.

        For the below stated reasons, this Court respectfully recommends that Defendants' Motion

be granted with respect to all of Plaintiffs' claims except Defendant Nicole Petker's LED light enhancement claim.

## I.    BACKGROUND

### A. Relevant Facts

The instant class action has four named Plaintiffs seeking to recover money damages resulting from Defendants' allegedly fraudulent, false and misleading advertising and marketing of Defendants' at-home teeth whitening products. *See* Pls. Complaint ("Compl.") at ¶ 1, ECF 1.

### 1.    The Parties

Plaintiff Melissa Poyer ("Poyer") is a resident of Nassau County, New York, who purchased and received Defendants' products in New York. *Id.* at ¶ 12. Specifically, Poyer purchased an allegedly Fraudulent Whitening Device on May 20, 2021 from Defendants' website trysnow.com for $149. *Id.* at ¶ 64.[1]

Plaintiff Joanne Moynihan ("Moynihan") is a resident of Herkimer County, New York, who purchased and received Defendants' products in New York. *Id.* at ¶ 13. Specifically, Moynihan purchased an allegedly Fraudulent Whitening Device on August 24, 2019 from trysnow.com for $149. *Id.* at ¶ 61.

Plaintiff Nicole Petker ("Petker") is a resident of Suffolk County, New York, who purchased and received Defendants' products in New York. *Id.* at ¶ 14. Specifically, Petker purchased an allegedly Fraudulent Whitening Device on or about December 23, 2019 from trysnow.com for $174.50. *Id.* at ¶ 62.

Finally, Plaintiff Kimberly Marino ("Marino") is a resident of Onondaga County, New

---

[1] Note, Plaintiffs' Complaint defines "Fraudulent Whitening Devices" as collectively and individually referring to the following products from Defendants: "The Accelerating LED Mouthpiece", the "Original", the "At-Home Teeth Whitening All-in-One Kit" (the "All-in-One Kit") or any other purchase of Defendants' wired teeth-whitening light device. *Id.* at ¶ 25.

York, who purchased and received Defendants' products in New York. *Id.* at ¶ 15. Marino purchased an allegedly Fraudulent Whitening Device on or about March 22, 2021 from trysnow.com for $160.92. *Id.* at ¶ 63.

As for Defendants, Defendant Snow Teeth Whitening LLC is an Arizona limited liability company, with its principal place of business located in Phoenix, Arizona. *Id.* at ¶ 16.

Defendant Snow Cosmetics LLC (together with Snow Teeth Whitening LLC, "Snow") is a Delaware limited liability company, with its principal place of business located in Phoenix, Arizona. *Id.* at ¶ 17.

Defendant Foresold LLC ("Foresold") is an Arizona limited liability company, with its principal place of business located in Phoenix, Arizona. *Id.* at ¶ 18. Plaintiff further alleges that Snow is a wholly-owned subsidiary of Foresold. *Id.* at ¶ 19.

Finally, Defendant Joshua Elizetxe is the founder and chief executive officer of Snow, the managing principal of Foresold, and a citizen of Arizona. *Id.* at ¶ 20.

   2.  *Summary of Factual Allegations and Plaintiffs' Alleged Reliance in Complaint*

Plaintiffs claim that Defendants misrepresented, among other things, that Snow's At-Home Teeth Whitening All-in-One Kit ("Kit") was approved by the Food and Drug Administration ("FDA"), *id.* at ¶¶ 65-74, and that Defendants' products, including the Accelerating LED Mouthpiece, were falsely advertised with misrepresentations as to their effectiveness, usage, and technology. *Id.* at ¶¶ 75-93. For the LED Mouthpiece specifically, Plaintiffs allege that "[i]n October 2019 on trysnow.com, Defendants claimed that the All-in-One Kit has a patent-pending LED mouthpiece that accelerates the teeth whitening process." *Id.* at ¶ 80. Finally, Plaintiffs further claim that Defendants misrepresented Snow's awards and recognition, and customers reviews for their products. *Id.* at ¶¶ 39-42; 94-102.

3

Building from the above factual allegations, Plaintiffs made several specific allegations of reliance regarding the named Plaintiffs' decision to purchase Defendants' products.  Specifically, Plaintiffs alleged that "Moynihan relied on the [celebrity] endorsement of Kris Jenner, another Snow celebrity spokesperson, in deciding to purchase Defendants' products."  *Id.* at ¶ 49. Moreover, "Moynihan relied on Defendants' misrepresentations of accolades their products had received in deciding to purchase Defendants' products."  *Id.* at ¶ 98.

"Petker relied on the [celebrity] endorsements of Gronkowski and Mayweather in deciding to purchase Defendants' products."  *Id.* at ¶ 60.  Additionally, "Petker relied on Defendants' misrepresentation that their products are FDA approved in deciding to purchase Defendants' products."  *Id.* at ¶ 74.

"Marino relied on Defendants' misrepresentation that their products cause no teeth sensitivity in deciding to purchase Defendants' products."  *Id.* at ¶ 77.  Marino also "relied on Defendants' misrepresentation that Defendants' products worked faster than whitening strips in deciding to purchase Defendants' products."  *Id.* at ¶ 79.

"Poyer relied on Defendants' misrepresentation that Defendants' products, including their LED light, would produce professional results at home in deciding to purchase Defendants' products."  *Id.* at ¶ 86.[2]

## B.  Procedural History

### 1.  *Previous* Kraus *Lawsuit*

In 2020, Plaintiffs' current lawyers filed a previous class action against Defendants with a

---

[2] The Court also notes that the Opposition cites Paragraph 83, *see* Opp. at 4, as an example of Plaintiffs' alleged reliance, but that paragraph only refers to why Poyer and Marino were "initially drawn" to Defendants' products rather than what they ultimately relied on in purchasing the product.

very similar Complaint to this one, which was also decided by this Court.[3]  *See Kraus v. Snow Teeth Whitening LLC*, No. 20CV6085JMAST, 2022 WL 4642170, at *1 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted*, No. 20-CV-6085 (JMA)(ST), 2022 WL 4662819 (E.D.N.Y. Sept. 30, 2022); Defs. Mot., at Ex. 1. ECF 32-3.

Named Plaintiff Burton Kraus purchased Defendants' Kit in July 2020.  *Kraus*, 2022 WL 4642170, at *1.  "On April 8, 2020—more than three months before Plaintiff purchased the Kit in question—Plaintiff's lawyers sent Snow a demand letter complaining about Snow's teeth whitening products," which "included a draft complaint seeking millions of dollars in damages." *Id.*  "Defendants allege[d] that when Snow rejected that demand, Plaintiff purchased the Product in July 2020 and filed [the *Kraus*] action in December 2020, adopting his attorneys' pre-drafted allegations as his own."  *Id.* at 2.  Defendants moved to dismiss for lack of standing.  *Id.*

On September 15, 2022, this Court granted Defendants' Motion to Dismiss because Plaintiff "failed to show that his injuries were traceable to Defendants' conduct." *Id.* at 8.  While the *Kraus* Motion to Dismiss was pending, Kraus' lawyers recruited the four current Plaintiffs through the website "Top Class Actions" and other ads posted online.  *See, e.g.*, Deposition of Kimberly Marino ("Marino Tr."), dated August 9, 2022 at 92:20-94:9, ECF 32-4; Deposition of Joanne Moynihan ("Moynihan Tr."), dated August 10, 2022 at 121:10-24, ECF 32-5; Deposition of Melissa Poyer ("Poyer Tr."), dated August 16, 2022 at 190:3-11, ECF 32-6; and Deposition of Nicole Petker ("Petker Tr."), dated August 17, 2022 at 189:5-190:7, ECF 32-7.  Hence, the procedural posture of *Kraus* and the instant case overlaps.

---

[3] As discussed *infra*, the previous Complaint differs from the present action regarding certain allegations of reliance on Defendants' statements, but the *Kraus* complaint is still very similar to the instant Complaint.  *Compare* ECF 1 [current Complaint] to ECF 32-3 [*Kraus* Complaint].

2. *Present Case*

On March 18, 2022, Plaintiffs commenced the present action.  *See* ECF 1.  Plaintiffs' Complaint alleged the following counts: First Count (Deceptive Acts and Practices in Violation of New York General Business Law § 349); Second Count (False Advertising in Violation of New York General Business Law § 350); Third Count (Breach of Express Warranty); Fourth Count (Breach of Implied Warranty of Merchantability); Fifth Count (Unjust Enrichment).  *Id.* at 18-22.

On May 20, 2022, Defendants filed their Answer.  *See* ECF 16.  As noted above, all four named Plaintiffs were deposed in August 2022.  Mot. at 4.

On October 5, 2022, Defendants filed a letter requesting a pre-motion conference highlighting Plaintiffs' deposition testimony and argued that Plaintiffs lack Article III standing to pursue this lawsuit.[4]  *See* ECF 28.  On October 12, 2022, Plaintiffs filed their response.  *See* ECF 29.

On October 25, 2022, the Honorable Joan M. Azrack referred Defendants' request for a pre-motion conference and any resulting motions to this Court for a Report and Recommendation. *See* ECF Entry dated October 25, 2022.

On November 10, 2022, this Court held a pre-motion conference and authorized Defendants' filing of the instant Motion to Dismiss and set a briefing schedule.  *See* ECF 31.  The fully briefed Motion to Dismiss was filed on February 3, 2023 and referred to this Court on the same day.  *See* ECF 32 and ECF entry dated February 3, 2023.

## II.    LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v.*

---

[4] The key deposition testimony at issue for all four named Plaintiffs is discussed *infra*.

*United States,* 201 F.3d 110, 113 (2d Cir. 2000). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck—Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("Generally, '[s]tanding is a federal jurisdictional question determining the power of the court to entertain the suit.' ") (quoting *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010)).

"[A] plaintiff must demonstrate standing for each claim" and form of relief sought. *Mahon*, 683 F.3d at 64 (citations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Buonasera v. Honest Company, Inc.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016) (citations omitted); *see also Clarke v. U.S.*, 107 F. Supp. 3d 238, 243 (E.D.N.Y. 2015) ("Courts must accept as true all material factual allegations in the complaint and refrain from drawing from the pleadings inferences favorable to the party asserting jurisdiction.") (citing *Fox v. Worldwide Chauffeured Transp. of N.Y., LLC*, No. 08-CV-1686, 2009 WL 1813230, at 1 (E.D.N.Y. June 25, 2009)).

A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based. *Carter v. Health Port Technologies, LLC*, 822 F.3d 47, 56 (2d. Cir. 2016). When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the pleading including the complaint or the complaint and exhibits attached to it, the plaintiff has no evidentiary burden. *Id.*; *see also Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d. Cir. 2011). The task of the district court is to determine whether the pleading "allege[s] facts that affirmatively and

plausibly suggest that [the plaintiff] has standing to sue." *Id.*; *see e.g.*, *Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the pleading. *See e.g.*, *Amidax*, 671 F.3d at 145; *Robinson v. Government of Malaysia*, 269 F.3d 133, 140 n. 6 (2d Cir. 2001); *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). In opposition to such a motion, the plaintiffs would need to come forward with evidence of their own to controvert that presented by the defendant "if the affidavits submitted on a 12(b)(1) motion ... reveal the existence of factual problems" in the assertion of jurisdiction. *Carter*, 822 F.3d at 57; *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976). If the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing, then the plaintiffs are entitled to rely on the allegations in the pleading. *Carter*, 822 F.3d at 57. "However, if the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Id.* Where jurisdictional facts are placed in dispute, "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *see also Makarova*, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings.").

In the present case, Defendants support their Motion to Dismiss with evidence beyond the

pleadings. *See generally*, Defs.' Mot. to Dismiss.[5] Accordingly, this Court will treat Defendants' Motion as a fact-based application and consider Plaintiffs' deposition testimony submitted by Defendants to assess whether Plaintiffs have Article III standing.

## III.   DISCUSSION

### A.  Article III Standing

To establish standing under Article III of the Constitution, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Akridge v. Whole Foods Market Group, Inc.*, 20 Civ. 10900 (ER), 2022 WL 955945 at *4 (S.D.N.Y. Mar. 30, 2022) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

*1.  Plaintiffs Have Adequately Alleged Injury*

This Court concludes that Plaintiffs have adequately alleged injury with respect to the class in general and each named Plaintiff specifically. Plaintiffs allege that they overpaid for the subject product(s), which gives them Article III standing to sue.

To establish standing under Article III of the Constitution, a plaintiff must show that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent. *Akridge*, 2022 WL 955945 at 4. Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021); *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63–64 (2d Cir. 2021). The injury-in-fact element requires that the plaintiff be

---

[5] Specifically, Defs' Motion frequently refers to, and relies on, the deposition testimony of the four named Plaintiffs, which are exhibits to the Declaration of Douglas S. Curran, Esq. in Support of Defendants' Motion, dated December 16, 2022. *See* ECF 32-2.

"the proper party to bring this suit." *Carter*, 822 F.3d at 55; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute. . ." *Id.* at 819. Any monetary loss suffered by the plaintiff satisfies this element; "[e]ven a small financial loss" suffices. *Natural Resources Defense Council, Inc. v. United States Food & Drug Administration*, 710 F.3d 71, 85 (2d Cir. 2013); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (stating that the injury-in-fact requirement is "a low threshold," which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy[.]") (internal quotation marks and citations omitted).

In a false-advertising case, "the 'injury is the purchase price.' " *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017) (quoting *Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 JSR, 2013 WL 6504547, at 5 (S.D.N.Y. Dec. 11, 2013)). This injury prong "may be satisfied through an allegation that a plaintiff overpaid for the product, or, stated differently, 'by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations.' ." *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017) (quoting *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at 23 (E.D.N.Y. July 21, 2010)).

Here, Plaintiffs have alleged that: "[a]s a result of Defendants' materially misleading advertisements and marketing materials, Defendants were enriched at the expense of Plaintiffs and the members of the Class, in the amount of at least One Hundred and Forty-Nine Dollars ($149) per customer." *See* Compl. at ¶ 131. *See also id.* at ¶ 92 ("Upon information and belief, the LED light included with Defendants' Fraudulent Whitening Devices can be purchased on Alibaba.com for a *mere fraction of the price* Defendants' charge customers to purchase their Fraudulent Whitening Devices.") (emphasis added). In fact, Defendants' Motion never contests the injury prong and instead begins Defendants' standing argument with a causation analysis. Mot. at 8.

Additionally, Plaintiffs' deposition testimony further shows that Plaintiffs alleged they overpaid. *See* Opp. at 8-9 (collecting deposition testimony regarding Plaintiffs' subjective reasons for bringing the lawsuit). As one example, Plaintiff Poyer alleges that instead of "spending a hundred and fifty dollars" she "could get basically the same results as a cheap, you know, Crest Whitestrip. . ." Poyer Tr. at 114:5-7. Hence, consistent with *Kraus*, this Court recommends that the District Court find that Plaintiffs have "sufficiently alleged in the [Complaint] that [they] overpaid for the Kit and that [they] could have purchased similar teeth whitening products in the market from other companies for a lower price." *Kraus*, 2022 WL 4642170, at *4.

2.  *Causation*

In support of dismissal, Defendants argue that Plaintiffs have not shown that Defendants' advertisements were the cause of their injuries because Plaintiffs did not rely on them to purchase the subject products. Conversely, Plaintiffs argue that the Defendants' false advertisements and misleading marketing materials were the cause of their injuries.

The "causal connection" element of Article III standing, i.e., the requirement that the plaintiff's injury be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court," does not create an onerous standard. *Carter*, 822 F.3d at 55 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60, (1992) (internal quotation marks omitted)). For example, it is a standard lower than that of proximate causation. *Carter*, 822 F.3d at 55-56; *see also Rothstein v. UBS AG*, 708 F.3d 82, 91–92 (2d Cir. 2013). A defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing. *Id.* at 91. The Second Circuit has provided that:

> As a rule, causation is shown if the defendants' actions had a "determinative or coercive effect" on the action that produced the injury. *Bennett v. Spear*, 520 U.S.

154, 169 (1997).  Though causation is lacking if the claimed injury results from "the independent action of some third party not before the court," a plaintiff need not allege that "the defendant's actions [were] the very last step in the chain of causation" to demonstrate that the defendant's actions caused the claimed injury. *Id.*  It suffices that the defendant's actions had a "determinative or coercive effect upon the action of someone else" who directly caused the claimed injury. *Id.*  Thus, causation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation.

*Carver*, 621 F.3d at 226 (emphasis supplied).  In the context of false advertising "under a price premium theory, a plaintiff must allege not only that [the] defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Turk v. Rubbermaid Incorporated*, No. 21-CV-270 (KMK), 2022 WL 836894 at *8 (S.D.N.Y. Mar. 21, 2022) (quotation marks omitted); *see also Sabatano v. Iovate Health Scis. U.S.A. Inc.*, No. 19-CV-8924, 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020) ("A plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied.") (citations omitted)).

In false advertising cases, the only way a plaintiff can show that he was injured as a result of the defendant's representations is to prove that he saw and relied on the statements at issue.  *See, e.g.*, *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (dismissing claims under 12(b)(1) for lack of standing where purchaser of "fat-burning" product could not "plausibly allege an injury traceable to" a spokesperson for the product because she bought the product before the representations in question had been made and therefore could not have relied on them in making her purchase).

Here, Plaintiffs' Complaint identified various advertisements and misleading statements allegedly made by Defendants.  *See, e.g.*, Compl. at ¶ 104.  Plaintiffs further allege that "[b]ut for Defendants' materially misleading advertisements and marketing materials, Plaintiffs and the members of the Class would not have purchased Defendants' All-in-One Kit" or "Fraudulent

Whitening Devices." *See* Compl. at ¶¶ 107, 112. To seek dismissal, Defendants rely on Plaintiffs' deposition testimony to show that there was no causation or that Plaintiffs' alleged injury could not be traced to Defendants' advertisements. For the following reasons, this Court agrees with Defendants' causation position with respect to all of Plaintiffs' claims except for Defendant Petker's LED light enhancement claim, and issues recommendations accordingly.

*(a) Plaintiff Moynihan's Deposition Testimony is Insufficient to Allege Causation*

This Court recommends that the District Court conclude that Plaintiff Moynihan's deposition testimony is insufficient to allege causation for Article III standing purposes. Glaringly, Plaintiffs' Opposition does not even *mention* Moynihan when addressing causation. Furthermore, Plaintiffs offer no case law, nor has this Court found any, contesting the well-established proposition that *each individual Plaintiff* must establish standing for their own claims. *See TransUnion LLC*, 141 S. Ct. at 2208 ("*Every class member* must have Article III standing in order to recover individual damages.") (emphasis added); *see also Mahon*, 683 F.3d at 64 ("[A] plaintiff must demonstrate standing for each claim" and form of relief sought.); *see also In re UBS AG Sec. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments by its opponent that it fails to address).[6]

Additionally, when comparing Plaintiff Moynihan's deposition testimony to the reliance allegations in Plaintiffs' Complaint, this Court concludes that Plaintiff Moynihan's lack of causation is even more apparent. Specifically, the Complaint alleges that "Moynihan relied on the endorsement of Kris Jenner, another Snow celebrity spokesperson, in deciding to purchase Defendants' products," *id.* at ¶ 49 and that "Moynihan relied on Defendants' misrepresentations

---

[6] Note, while the Court recognizes that the SDNY's language in *UBS AG Sec. Litig.* was not about causation specifically, this Court concludes that the broad principle of "conceding through silence" supplements the other deficiencies noted above regarding Plaintiff Moynihan's lack of causation.

of accolades their products had received in deciding to purchase Defendants' products." *Id.* at ¶ 98. As to the latter, Plaintiff Moynihan's deposition testimony directly contradicts Plaintiffs' Complaint since Moynihan concedes she did *not* rely on any such accolades: "Q. Okay. So you haven't seen any statements – any representations about accolades and so, therefore, you didn't rely on any --? A. That is correct." *See* Moynihan Tr. at 118:10-22; *see also* Mot. at 5.

Additionally, Plaintiff Moynihan concedes that the "only reason" she purchased the product was because she liked how Kris Jenner's teeth *looked*. Specifically, Moynihan testified as follows: "Q. And is the *only reason* that you wanted to purchase the product because you saw Kris Jenner's teeth and they looked white and so you wanted teeth that looked like that? A. Yes." *See* Moynihan Tr. at 42:13-18 (emphasis added). Furthermore, Moynihan also admitted that she didn't "recall anything Kris Jenner actually said in the video." *Id.* at 41:8-11.[7] Based upon these admissions, this Court concludes that Plaintiff Moynihan did not rely upon any false statement *by Snow* when deciding to purchase Defendants' product. Without such reliance, there is no causation. *See, e.g.*, *Sabatano*, 2020 WL 3415252, at 3 ("A plaintiff must also demonstrate reliance, which typically means he must point to a *specific advertisement or public pronouncement* upon which the consumer relied.") (citations omitted) (emphasis added). Hence, this Court recommends that the District Court find that Moynihan lacks standing.[8]

*(b) Plaintiff Marino's Deposition Testimony is Insufficient to Allege Causation*

Though a closer question than Plaintiff Moynihan, this Court concludes that Plaintiff Marino's deposition testimony shows a lack of causation. Plaintiffs' Opposition argues that "[t]wo

---

[7] Notably, Plaintiffs do not cite any case law, nor has this Court been able to find any, for the proposition that merely relying on a celebrity endorsement satisfies causation for Article III standing purposes. Moreover, the lack of causation is further exacerbated here because Moynihan concedes she did not rely on any of the celebrity's *words*.

[8] This Court also recognizes that Defendants' Motion accurately details numerous other advertisements and claims that Moynihan testified she did not rely on. *See, e.g.*, Mot. at 4-6. However, the Court concludes that there is no reason to discuss this testimony further because of Moynihan's affirmative statement above about the "only reason" she purchased Defendants' product.

of Defendants' key misrepresentations caused Plaintiff Kimberly Marino to purchase Defendants' products: (a) 'that their products cause no teeth sensitivity' (Compl. ¶ 77) and (b) 'that Defendants' products worked faster than whitening strips' " (Compl. ¶ 79). *See* Opp. at 9. The Opposition further asserts that "Marino's deposition testimony confirms these allegations." *Id.* at 9-10.[9]

More specifically, the Opposition argues that "[w]ith respect to teeth sensitivity, Marino was asked, 'Is there any other reason that you bought the Snow product when you did in March 2021?' and she responded, 'Yes. They said that it was a good product to use for sensitive teeth …' (Marino Tr. at 30:22-31:2)." Opp. at 10. "When asked for more details about what she saw, Marino testified that 'it [the benefit for sensitive teeth] was mentioned in text messages sent to me and emails [from Defendants]' (Marino Tr. at 31:11-20)." *Id.* Moreover, "[w]ith respect to the efficiency of Defendants' products, Marino was asked, 'Is it true that you relied on the claim that defendants' products worked faster than whitening strips in deciding to purchase Snow's products?' to which Marino responded, 'That is true' (Marino Tr. at 72:2-8). And Marino confirmed that she saw this misrepresentation on Defendants' website before purchasing Defendants' products (Marino Tr. at 72:9-12, 72:25-73:4)." *Id.*

When considered in isolation, the above testimony initially appears to show reliance. However, when Marino was pressed to specify the sources of the claims that she actually relied on, it became clear that Marino did not rely upon any false statement *from Snow*, including text messages, when she ultimately decided to purchase Defendants' products.

First, for tooth sensitivity and the March 2021 purchase, Marino testified as follows:

Q. Was there anything *in particular you relied on* in making that purchase in March of 2021?

---

[9] Note, Marino is not specifically linked to any other Complaint allegations of reliance. The Court notes that Paragraph 83 of the Complaint provides that "Poyer and Marino were both *initially drawn* to Defendants' products by advertisements featuring Defendants' LED mouthpiece." (emphasis added). However, the question is what Plaintiffs ultimately relied on in deciding to purchase Defendants' products, not what "initially drew" Plaintiffs to the products.

A. No. I guess I think I already answered that. So what are you asking me?

Q. So are you saying that the *YouTube reviews that we just talked about and things that you saw on Snow's website* is what you relied on in making that purchase?

A. Correct.

Marino Tr. at 60:20-61:6 (emphasis added).  Again, Marino never mentioned any "text messages" from Snow when specifying what she relied on "in particular" when making the March 2021 purchase, which is the only purchase the Opposition refers to concerning tooth sensitivity.  *See* Opp. at 10.  Moreover, the Youtube reviews were from third parties so they cannot be attributed to Snow either.  *See also* Reply at 7-8.  Thus, the remaining inquiry is what *specific content* from Snow's website Marino relied upon when making the March 2021 purchase.  Notably, however, Marino conceded elsewhere in her deposition that the *only content* she recalled seeing from Defendants' website was more customer reviews and not specific statements by Snow:

Q. Okay. So we have already talked about You Tube reviews. So let's go back to things that you saw on Snow's website. What exactly did you see on Snow's website?

A. They had reviews. They talked about the products, and that is pretty much all I recall.

Q. Anything else other than the reviews that were on the website?

A. Not that I recall.

*Id.* at 61:7-17; Reply at 8.  Hence, this Court concludes that Marino's testimony does not allege sufficient causation with respect to tooth sensitivity and the March 2021 purchase.

Similarly, this Court also concludes that Marino's deposition testimony regarding the claim that Snow's products work faster than whitening strips fails to allege sufficient causation as well. Marino's pertinent testimony is as follows:

Q. Is it true that you relied on the claim that defendants' products worked faster than whitening strips in deciding to purchase Snow's products?

MR. LAWLER: Asked and answered. You can answer.

A. That is true.

Q. And where did you see that – that statement?

A. In the reviews and on the website.

Q. When you say in the reviews, which reviews are you talking about exactly?

A. You Tube.

Q. Any other reviews that you are talking about?

A. I believe it was mentioned on their reviews for their website.

*Id.* at 72:2-20.  Again, when the deposition testimony that Plaintiffs cite is examined in full, *see* Opp. at 9-10, it is clear that the only two sources of information Plaintiffs rely upon regarding the speed of Defendants' products is third-party Youtube reviews, which cannot be attributed to Snow, and Snow's website.  However, as discussed above, the only content Marino recalls from Snow's website is more customer reviews.  *Id.* at 61:7-17; Reply at 8.  Thus, this Court recommends that the District Court find that Plaintiff Marino lacks standing as well.[10]

*(c) Plaintiff Poyer's Deposition Testimony is Insufficient to Allege Causation*

This Court also concludes that Plaintiff Poyer's deposition testimony is insufficient to allege causation for Article III standing purposes.  The Opposition correctly notes that Plaintiffs' Complaint alleges that "Poyer [was] initially drawn to Defendants' products by advertisements featuring Defendants' LED mouthpiece" (Compl. ¶ 83) and that "Poyer relied on Defendants'

---

[10] This Court also recognizes that Defendants' Motion accurately details numerous other advertisements and claims that Marino testified she did not rely on.  *See, e.g.*, Mot. at 4-6.  However, the Court concludes that there is no reason to discuss this testimony further because of Marino's affirmative statements above about what she *did* rely on "in particular."  Marino Tr. at 60:20-61:6.

misrepresentation that Defendants' products, including their LED light, would produce professional results at home in deciding to purchase Defendants' products." (Compl. ¶ 86). Opp. at 10.[11]

The Opposition further argues that Poyer's deposition testimony confirms these allegations. *Id.* Specifically, the Opposition notes that Poyer stated that "the initial thing that drew [her] to Snow's product was the Instagram videos show -- featuring the LED mouthpiece" and that she "relied on Snow's representation that its product including the LED light would produce professional results at home in deciding to purchase Snow's product" (Poyer Tr. at 149:16-25). Opp. at 10-11.

Again, however, the key inquiry is the specific sources of information Poyer relied on that ultimately led her to purchase Defendants' products, not what "initially drew her" to the products. To parse out this distinction, it is necessary to review several portions of Poyer's deposition testimony. First, the Opposition correctly notes that Poyer stated that she relied on "Snow's representation that its product including the LED light would produce professional results at home in deciding to purchase Snow's product." *See* Poyer Tr. at 149:16-25. Poyer further stated that this claim was mentioned from Snow's "initial Instagram videos that came up." *Id.* at 150:7-9. However, Poyer clarified elsewhere in her deposition that no Instagram video was the factor that ultimately led her to purchase Defendants' products:

> Q. So did you rely on any ad or statement that you saw on Instagram about Snow's product in deciding to purchase the product?
>
> A. I did take it into consideration when I decided to make the -- the purchase, yes.
>
> Q. Was it the reason that you purchased the product?
>
> A. No.

---

[11] Note, the Complaint does not specifically link Poyer to any other allegations of reliance.

Q. So what was the reason that you purchased the product?

A. In -- after visiting the site and seeing a few of the ads come up, I did *a little bit more research* just by general *Google of reviews* of the product as well as the *reviews of the product* on their own site.

*Id.* at 27:11-28:3 (emphasis added); *see also* Mot. at 19-20; Reply at 9. Hence, Poyer decided to do "a bit more research" on her own, which shows a *lack* of reliance on the Instragram videos. Indeed, when pressed to identify what specifically led her to purchase the product, Poyer further confirmed it was "the reviews" that she read and her own "basic review of the overall product." *See* Mot. at 19. Specifically, Poyer testified as follows:

Q. Do you recall how many reviews you saw in total on Google?

A. I don't recall the amount. There were a few that did come up. I would say --I would ballpark it in the same as the website, between five and ten that I, you know, read through and reviewed.

Q. And the majority of the reviews that you saw were positive; is that right?

A. That would be correct

Q. And did you rely on any of those reviews in deciding to purchase Snow's product?

A. I did take them into consideration, yes.

Q. And so what was it that convinced you to purchase the product?

A. In addition to *the reviews that I did read*, just kind of *basic review of the overall product*, in taking their reviews and what they say the product provided and the price, cost of it, would be what made my decision.

*See* Poyer Tr. at 38:16-39:17 (emphasis added).

Finally, Poyer also admitted elsewhere in her deposition that she did not rely on "any statement" from Snow's website:

Q. Was there any statement on Snow's website that caused you to buy the product?

A. Not that I can recall.

*Id.* at 40:6-8.  Therefore, this Court recommends that the District Court find that Plaintiff Poyer lacks standing.[12]

> *(d) Plaintiff Pektker's Deposition Testimony Sufficiently Alleges Causation Regarding the LED Light Enhancing Claim, but Fails to Allege Causation for All Other Claims*

This Court concludes that Plaintiff Petker's testimony sufficiently alleges causation regarding the LED light enhancing claim, but fails to allege causation for all other claims.  Hence, this Court only recommends that the District Court find that Plaintiff Petker has standing for the specific claim about the LED light enhancing, but no other claims alleged.  Petker's testimony and allegations are more nuanced so the Court will examine several parts of Petker's deposition in turn.

First, the Opposition correctly notes that the Complaint alleges that "Petker relied on Defendants' misrepresentation that their products are FDA approved in deciding to purchase Defendants' products (Compl. at ¶ 74)."  Opp. at 11.  The Opposition also asserts that "[w]hen asked whether she relied on anything on Snow's website in deciding to purchase Defendants' products, Petker included the products' purported FDA approval in her response (Petker Tr. at 55:4-56:7)."  *Id.* at 11-12.  The key testimony is as follows:

Q. The FDA approved what?

A. I guess we'll call it a plug. I don't know what you would -- like a description or towards, umm -- I don't know what you would call it, but they mentioned that it was FDA approved, so I just assumed, you know, if it's FDA approved, that means it went through testing and all this stuff -- going to assume. Umm, so why not buy it.

*Id.* at 55:23-56:7.

However, when pressed further later in her deposition, Petker conceded she "may have" purchased Defendants' product anyway even without the FDA approval:

---

[12] Again, this Court recognizes that Defendants' Motion accurately details numerous other advertisements and claims that Poyer testified she did not rely on.  *See, e.g.*, Mot. at 4-6.  However, the Court concludes that there is no reason to discuss this testimony further because of Poyer's affirmative statements above as to what she *did* rely on.

> Q. What about if you hadn't seen the -- any statements about FDA approval, would you have still purchased the product?
>
> A. Again, I'd be like a little hesitant, probably sitting in the cart a little bit longer -
>
> Q. But eventually you may have come around and purchased it anyway?
>
> A. Yeah, possibly.

Petker Tr. at 179:14-22.[13]  Thus, this Court concludes that Petker's testimony shows there was no "determinative or coercive effect" from Snow's alleged FDA approval claim as required for Article III standing purposes.  *See Carver*, 621 F.3d at 226.[14]

Conversely, this Court concludes that Petker's deposition testimony sufficiently alleges causation regarding Snow's claim about LED light enhancement.  Snow's claim about LED light enhancement appears multiple times in Plaintiffs' Complaint.  *See, e.g.*, Compl. at ¶ 91 ("Yet Defendants tell consumers that their LED light device 'accelerates' the whitening process."); ¶ 104 ("Defendants have falsely claimed that (i) their LED light enhances and accelerates their product's ability to whiten teeth. . .").  Importantly, the Opposition accurately notes that "Petker testified that 'on the product page' for Defendants' wired kit, Defendants represented that the LED light 'enhanced' or 'sped up' the teeth whitening process (Petker Tr. 48:20-49:10), and that but for this misrepresentation, she would not have purchased Defendants' products (Petker Tr. 180:22-181:2)."  Opp. at 12.  The key deposition testimony is the following:

> Q. And then you also said earlier that you saw something about the -- the LED lights enhancing the process. If you hadn't seen that, do you think you would have purchased the product anyway?

---

[13] The Court also notes that Petker referred to the FDA statement as "mumbo jumbo" elsewhere in her deposition. *Id.* at 47:21-25.  Petker's failure to recall specific content about FDA approval further suggests a lack of reliance when coupled with the fact that Petker admitted she "may have" purchased the product even without FDA approval.

[14] The Court also notes the Opposition's contention that "as alleged in the Complaint, Defendants' own social media accounts and other marketing materials have suggested, or even outright declared, that Defendants' products are FDA approved (Compl. ¶¶ 65, 72-73)."  Opp. at 12.  However, that does not cure the deficiency of *Pekter's* lack of reliance on the FDA approval when ultimately deciding to purchase Defendants' product.

A. I'm going to have to go with a no.

*Id.* at 180:22-181:2. Thus, Petker's testimony alleges the "determinative or coercive effect" necessary to allege causation for the specific claim concerning LED light enhancement. *Carver*, 621 F.3d at 226. Moreover, this Court is not persuaded by Defendants' arguments to the contrary.

Defendants argue that Petker's testimony above "directly contradicts Petker's other testimony and what she claims to have relied on in the Complaint, i.e., 'the endorsements of Gronkowski and Mayweather' and their 'pearly white' teeth. (Compl. ¶¶ 54, 60; Mot. at 21-22.)" Reply at 1. To be clear, the Court agrees that Petker also testified that but-for the endorsements of Gronkowski and Mayweather, she would not have purchased Defendants' product:

> Q. Now, was there -- so there was nothing in the caption of that image that you relied on in deciding to purchase the product?
>
> A. You know, because at that point I was familiar with the brand and the product itself. Umm, although I didn't have luck with it, umm, you know, ***seeing their two faces made me want to try again***.
>
> Q. And the first time, when you didn't have luck with the product, it was because the LED wired mouthpiece that you received was defective, right?
>
> A. Yeah. Correct.

*Id*. at 89:7-20 (emphasis added); Mot. at 21-22. However, the Court concludes that the above testimony merely shows that Petker alleges *multiple* but-for causes, which are *both* the LED light enhancement claim on Defendants' website *and* seeing Gronkowski and Mayweather's faces in the endorsements. Yet, Defendants provide no case law, nor has this Court been able to find any, for the proposition that Petker must have *only* relied on *Defendants'* LED light enhancement statement to have standing. In other words, a second but-for cause from the celebrity endorsements does not detract from the other but-for cause of Snow's LED light enhancement claim on Snow's website. Rather, Petker is only required to "point to a specific advertisement or public

pronouncement" that she relied upon, which Petker did in her deposition testimony.  *Sabatano*, 2020 WL 3415252, at 3.[15]

This Court is also unpersuaded by Defendants' argument that since Petker admitted Defendants' product was defective both times she received it, that means Petker has no viable causation argument since she never used the product properly.  Mot. at 20 (citing Petker Tr. at 76:20-77:14; 89:16-20).  Defendants' argument fails because, as discussed *supra*, in a false-advertising case, "the injury is the purchase price."  *Kurtz*, 321 F.R.D. at 531 (internal quotations and citations omitted).  Hence, Petker's injury occurred as soon as she *purchased* the product after relying on Defendants' LED enhancement statement, regardless of whether the product subsequently malfunctioned.  Therefore, this Court recommends that the District Court find that Petker has Article III standing with respect to the LED light enhancement claim.

Notwithstanding the above recommendation, this Court agrees with Defendants that Petker's testimony cannot "save any other Plaintiff's claim as Plaintiffs seem to suggest." *Compare* Reply at 1-2 and Opp. at 1.  As discussed *supra*, "[e]very class member must have Article III standing in order to recover individual damages," *see TransUnion LLC*, 141 S. Ct. at 2208 and *Mahon*, 683 F.3d at 64 (citations omitted) (recognizing that "a plaintiff must demonstrate standing for each claim" and form of relief sought).  Thus, this Court recommends that the only claim that satisfies the threshold for Article III standing is Petker's LED light enhancement claim.[16]

---

[15] Though Petker does not quote specific wording regarding the LED enhancement claim, she does testify that she saw the claim on Snow's product page.  *See* Petker Tr. at 48:20-49:10.

[16] Again, this Court recognizes that Defendants' Motion accurately details numerous other advertisements and claims that Petker testified she did not rely on.  *See, e.g.*, Mot. at 4-6.  However, the Court concludes that there is no reason to discuss this testimony further because of Petker's affirmative statements above as to what she *did* rely on. Moreover, this Court's holding regarding the LED light enhancement claim does not mean that Petker has standing for the allegation that Defendants' "LED Light provides additional antiviral or antiseptic qualities."  Compl. at ¶ 104. No allegation of reliance from Petker, nor any other named Plaintiff, was made regarding the antiviral/anticeptic claim.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted with respect to all of Plaintiffs' claims except Defendant Petker's LED light enhancement claim made individually and on behalf of similarly situated plaintiffs.

## V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


**SO ORDERED.**


                                                    /s/ Steven L. Tiscione
                                                  Steven L. Tiscione
                                                  United States Magistrate Judge
                                                  Eastern District of New York


Dated: Central Islip, New York
May 5, 2023